917 So.2d 1160 (2005)
Mitchell BEARD
v.
Deborah Smith BEARD.
No. 05-CA-302.
Court of Appeal of Louisiana, Fifth Circuit.
November 29, 2005.
*1161 Maria M. Chaisson, Attorney at Law, Destrehan, Louisiana, for Plaintiff/Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Plaintiff/appellant, Mitchell Beard, appeals a Protective Order granting defendant/appellee, Deborah Smith Beard, exclusive use of Mr. Beard's separate home.
On October 6, 2004, Mr. Beard filed a Petition For Article 102 Divorce, reserving his right to a partition of community property. In February 2005, Mrs. Beard filed a Petition For Protection From Abuse pursuant to LSA-R.S. 46:2136. In her petition, Mrs. Beard alleged that Mr. Beard came after her with a knife, put her out of the house and told her if she returned "he would go to jail and I would go the hospital." She further alleged that he twice strangled her and was arrested for attempted murder, kicked her until she could not walk, beat her head against a door frame, tried to run over her with a car, and stalked her. Mrs. Beard requested an ex parte temporary restraining order prohibiting Mr. Beard from, among other things, abusing, harassing, following, contacting, or threatening her. The petition also requested the court grant Mrs. Beard a number of orders, including use of the matrimonial residence, as well as spousal support, attorney's fees, and court costs. In connection with the petition was a copy of a complaint made by Mrs. Beard to the St. John the Baptist Parish Sheriff's Office detailing one of the attacks made by her husband.
On February 15, 2005, the court granted a temporary restraining order in accordance with the petition, including use of the matrimonial domicile, and a hearing on the injunction was set for March 8, 2005. Mr. Beard filed an Ex Parte Motion To Vacate Ex Parte Award Of Temporary Restraining Order Granting Petitioner-In Reconvention Use Of Defendant-In-Reconvention's Separate Home. The motion urged that the date set for the hearing on the request for protective orders exceeded *1162 the statutory requirement under LSA-R.S. 46:2135(B) of twenty days. It was further urged that the matrimonial domicile is Mr. Beard's separate property, and that Mrs. Beard mislead the court in her petition by stating that she was the sole owner. The hearing on the restraining order was reset to February 24.
At the hearing, Ms. Beard's daughter, Sandra Rivere, testified that her mother often had bruises all over and blackened eyes. Ms. Rivere saw Mr. Beard chase Mrs. Beard with a van and try to run over her as she ran away, threatening her verbally as he did so. She has also seen Mr. Beard push and throw her, and put his arms around her neck. Ms. Rivere had lived rent-free in one of Mr. Beard's mobile homes, but when he found out he would have to pay alimony, he told Ms. Rivere, "I'm going to make you pay it. You're going to pay [rent] to me so I can give it to her."
Mrs. Beard testified that she filed for divorce when her husband chased her with a knife after an argument. She has been beaten, thrown on the floor, kicked, and had her head banged against a door. He was arrested several years ago for attempted murder, but he continued to hit her where it didn't show and also tried to run over her. She dropped the attempted murder charges and returned to him. He hit her ten to fifteen times. Mrs. Beard admitted that Mr. Beard owned the home, which was built while they were living together before they were married. Mr. Beard has about thirty rental properties, including mobile homes. When he threw her out of the family home, Mrs. Beard stayed at a bar owned by Mr. Beard, which was closed and had no heat. Mr. Beard had her evicted from the bar. She had recently been staying in a trailer owned by Mr. Beard, but on the evening before the hearing, her husband had her evicted. Mrs. Beard testified that her husband did not allow her to work or go out without his permission. She has no employment or job skills, and suffers from severe depression, anxiety, social phobia, and panic attacks for which she takes medication. Mrs. Beard further stated that her husband twice tried to have her committed because he refused to pay for her medication or treatment. She asked for spousal support, court costs, and expenses in addition to occupancy of the family home, in which she had lived both before and during the marriage.
Mr. Beard denied the allegations of abuse, and testified that he loves her and had always taken care of Mrs. Beard. He stated that he was not trying to run over her in the van but, rather, "dug donuts" in the yard, and Mrs. Beard was nowhere near the van. If he had tried, he could have run over her. He further claimed to have been forced to sell several properties and that he was broke, although he still owns some property. However, he stated in cross-examination that he sold one of the properties for $180,000. He testified that he had about thirteen trailers in Kenner, five of which are empty, and that Mrs. Beard could stay in any of them. He himself lives in one of them. He would turn on utilities for her. He does not mind her staying in the house, but he wants to be able to go back there to take care of the thirty acres. He does not want to have to contact Mrs. Beard and get her permission every time he wants to go back and get whatever he needs. Mr. Beard testified that he is not trying to hurt his wife, because she is seeing a psychiatrist and he knows she has problems.
In granting the injunction, the court found Mr. and Mrs. Beard had a sad and "sick" relationship, and that Mrs. Beard had all the symptoms of a battered spouse. The court further found that Mr. Beard *1163 showed himself to be "a very controlling person in every way, shape, and form." The court maintained the order domestic abuse order and granted Mrs. Beard use and possession of the family residence until August 24, 2006, while granting Mr. Beard the right to go with the sheriff to remove anything from the property that he needs for living arrangements. Mr. Beard was instructed not to turn off the utilities, obstruct mail delivery, or in any way interfere with his wife's living conditions. Regarding the need to maintain the property, the court commented that Mrs. Beard should get an attorney and work out an arrangement with Mr. Beard's lawyer. The court did not address the support issues.
In his appeal of the order insofar as it grants Mrs. Beard use and possession of the family residence, Mr. Beard contends that LSA-R.S. 46:2136(A)(2) and LSA-R.S. 9:374(A) provide that an order granting a party use of the separate property of the other spouse may be issued only if the petitioner has been awarded temporary custody of the parties' minor children.
LSA-R.S. 9:374(A) deals generally with use and occupancy of a family home in a situation wherein domestic abuse is not necessarily an issue. For domestic abuse situations, the legislature has enacted R.S. 46:2136(A), which, in pertinent part, states:
The court may grant any protective order or approve any consent agreement to bring about a cessation of abuse of a party, any minor children, or any person alleged to be incompetent, which relief may include but is not limited to:

(1) Granting the relief enumerated in R.S. 46:2135.
(2) Where there is a duty to support a party, any minor children, or any person alleged to be incompetent living in the residence or household, ordering payment of temporary support or provision of suitable housing for them, or granting possession to the petitioner of the residence or household to the exclusion of the defendant, by evicting the defendant or restoring possession to the petitioner where the residence is solely owned by the defendant and the petitioner has been awarded the temporary custody of the minor children born of the parties.
(Emphasis supplied.)
LSA-R.S. 46:2135 deals with the grounds for a temporary restraining order and, for unapparent reasons, does not address a situation in which the family domicile is owned solely by the defendant.
The present case presents a distinctive set of facts. Here, the trial court obviously found the testimony of Mrs. Beard to be more credible than that of her husband, and there is nothing in the record to contradict such a finding. In addition to the physical abuse detailed by Mrs. Beard, she testified that she had been serially evicted from other properties owned by her husband, most recently the night before the hearing. She further testified that she had been kept a virtual prisoner by her husband and was not allowed to work and, thereby, develop job skills. Mrs. Beard suffers from severe depression, anxiety, and panic attacks, and it appears that her immediate job prospects are dim.
The wording of LSA-R.S. 46:2136 makes it clear that the court is not limited to the enumerated relief. The legislature apparently fashioned the statute thus in order to permit the court to tailor relief to the circumstances of the case. Under the facts presented here, we find the decision by the trial court to award occupancy of the family home to Mrs. Beard is a protective order which results in the cessation of systematic psychological abuse by her husband. This abuse, in the form of the evictions cited above, has apparently continued *1164 well after their physical separation. Mr. Beard testified that he did not mind Mrs. Beard living in the house as long as he could get what he needed from there. Since the court granted such occupancy for the statutorily limited time of eighteen months, allowing Mr. Beard to obtain certain possessions and leaving open the details of property maintenance, we see no abuse of discretion.
For the foregoing reasons, the judgment is affirmed. Mr. Beard is assessed with all costs of this proceeding.
AFFIRMED.